[Civ. No. 20913. First Dist., Div. One. Apr. 18, 1963.]

BOARD OF ADMINISTRATION, STATE EMPLOYEES' RETIREMENT SYSTEM, Plaintiff and Respondent, v. ROY AMES, Defendant and Appellant.

216

218

Mathews & Traverse and Francis B. Mathews for Defendant and Appellant.

Stanley Mosk, Attorney General, and William J. Power, Deputy Attorney General, for Plaintiff and Respondent.

BRAY, P. J.—Defendant appeals from judgment in favor of plaintiff in the sum of $5,166.78.

## Questions Presented

1. When does the bar of section 338, subdivision 1, Code of Civil Procedure, commence to run in this character of action?

2. Was due process of law violated as to defendant by the proceeding before the Industrial Accident Commission between plaintiff and Highway Patrolman Hanson, in which defendant was not a party?

3. Does the statutory program provided by sections 21451, 21452 and 21453, Government Code, deny defendant the equal protection of the law?

4. Did the releases of the State Compensation Insurance Fund and Hanson to defendant, also release plaintiff's claim?

## Record

This is an action brought by the Board of Administration, State Employees' Retirement System, to recover from defendant the actuarial equivalent of the benefits for which the system is liable to Highway Patrolman Robert J. Hanson because of injuries caused by defendant's negligence and received in the course of his employment as such patrolman.

The facts are agreed. Defendant, while intoxicated, drove his automobile into the rear end of a Highway Patrol vehicle stopped at a stoplight, permanently injuring Patrolman Hanson and damaging the vehicle. Hanson received industrial accident benefits administered for the state by the State Compensation Insurance Fund. The State Fund and Hanson executed releases to defendant, as did the state solely for its property damage. Plaintiff was not advised of these releases until after Hanson's retirement and did not consent to them. As a state employee Hanson was subject to retirement. Plaintiff applied to the Industrial Accident Commission in a proceeding entitled *State Employees' Retirement System*, applicant, v. *Robert J. Hanson*, defendant, to have it determined that the disability of Hanson was industrially incurred and the extent thereof. The commission determined the disability to be industrially incurred, retired Hanson, and determined the extent of the disability and the amount to be paid to him. In the interim between that determination and the reinstatement from retirement and reemployment of Hanson, plaintiff

paid Hanson $5,166.78. Plaintiff brought this action to recover that amount. Judgment was granted therefor.

1. *Section* 338, *Subdivision* 1, *Code of Civil Procedure.*

This section provides for limiting the time within which actions may be commenced as follows: "Within three years: 1. An action upon a liability created by statute, other than a penalty or forfeiture."

This action is based upon sections 21451, 21452 and 21453, Government Code. Section 21451 provides: "If benefits are payable under this part because of an injury to or the death of a member and such injury or death is the proximate consequence of the act of a person other than his employer (the State or the employing contracting agency), the board may on behalf of this system recover from such person an amount which is the actuarial equivalent of the benefits which are provided by contributions of the State or contracting agency and for which this system is liable because of such injury or death."

Section 21452, so far as pertinent here, provides that the board may contract with the State Fund or the Attorney General for the recovery on behalf of the system from third persons of the amount mentioned in section 21451.

Section 21453 provides, in pertinent part: "Under such contract, the state fund, in its own name, or in the name of the board, or the Attorney General for the board, may, to recover such amounts regardless of whether such injury or death is industrial, commence and prosecute actions, file liens, or intervene in court proceedings all in the same manner and to the same extent, provided in Chapter 5, Part 1, Division 4 of the Labor Code, for the state fund or employer, except that such recovery shall not be made from benefits payable under this part because of such injury or death. The state fund or the Attorney General, as the case may be, may compromise claims before or after commencement of suit or entry of judgment for such amount as may be approved by a person duly authorized by the board for such purpose. . . ."

As this action, then, is one "upon a liability created by statute" the limitation at the time of the accident was three years, but the problem is: three years from when? Defendant contends that the starting date of the period of limitation was the date of the accident; plaintiff, that it was the date when a determination was made that Hanson was eligible for disability retirement. The accident occurred March 10, 1956. The determination was made May 26, 1958. The complaint

was filed December 31, 1959, more than three years from the date of the accident, but less than three years from the date of the determination.

At the time of the accident there was no specific provision in the Government Code as to the period of limitation on any action brought under the provisions of that code. However, subsequently and within three years of the accident, namely, in 1957, section 21455 was enacted. This section provides: "Actions brought by the board under this chapter shall be commenced within three years after the liability of the system to pay benefits is fixed. Liability of the system is fixed at the time the board approves the payment of benefits under this part."

■ It is plaintiff's position that the system had no cause of action until it became obligated to Hanson and that irrespective of any other provision of law the three-year limitation in section 338, subdivision 1, would not commence until 1958, and that section 21455, later enacted, is simply declaratory of existing law, but that if it constitutes a change in the law, it is one which nevertheless applies to the instant action.

We think that plaintiff's position is well taken. Certainly when the accident occurred there then existed no liability of defendant to plaintiff created by statute or otherwise, and hence at that time plaintiff had no cause of action against defendant. How, then, could a limitation commence to run on a liability that did not exist? The statutory liability commenced when the Industrial Accident Commission determined the disability to be industrially incurred, retired Hanson, and determined the extent of the disability and the amount to be paid to him. Then, for the first time, defendant's liability provided for in section 21451 was created, and then the limitation of section 338, subdivision 1, commenced to run.

The situation is similar to that discussed in *St. Paul Fire & Marine Insurance Co.* v. *Cunningham* (1958) 257 F.2d 731. There the heirs of one Rasmussen who was killed while loading logs, sued Mast Lumber Company on the theory of *respondeat superior*, alleging that Rasmussen's death resulted from the negligence of Mast's employees. A judgment against Mast was obtained. Thereafter the insurance company, as Mast's subrogee, brought suit to recoup its losses as against the Mast employees, involved in the accident, under the authority of section 2865, Labor Code. The trial court dismissed the action on the ground that the statute of limita-

tions barred the action, holding that the statute ran from the date of the accident, the applicable statute for tort action being section 340, subdivision 3, Code of Civil Procedure (one year). On appeal the court held: "[A]ctions for recoupment cannot be maintained until the loss has been ascertained, either by a judgment against the employer or the payment of a judgment." (P. 732.) It then held that the court was not required to determine whether the statute started to run from the time of judgment, or the time of payment of judgment, as the action was brought within one year of either event. The case flatly holds that the statute does not run from the date of the accident but from the time the employer's loss is ascertained.

It is clear that even prior to the enactment of section 21455, the statute of limitations did not commence to run on the cause of action provided by section 21451 at the time of the accident but at the time the board's liability to Hanson accrued. Therefore, section 21455 did not change the law but merely declared the existing law.

 Assuming, however, that section 21455 constituted a change in the existing law, it nevertheless applies to this action. Having been adopted prior to the time the limitation in section 338, subdivision 1, had run, it comes within the rule of extension of periods of limitation.

"It is the settled law of this state that an amendment which enlarges a period of limitation applies to pending matters where not otherwise expressly excepted. Such legislation affects the remedy and is applicable to matters not already barred, without retroactive effect. Because the operation is prospective rather than retrospective, there is no impairment of vested rights. Moreover, a party has no vested right in the running of a statute of limitation prior to its expiration. He is deemed to suffer no injury if, at the time of an amendment extending the period of limitation for recovery, he is under obligation to pay. [Citations.] In *Campbell* v. *Holt*, 115 U.S. 620 [6 S.Ct. 209, 29 L.Ed. 483], at page 628, it was said that statutes shortening the period or making it longer have always been held to be within the legislative power until the bar was complete." (*Mudd* v. *McColgan* (1947) 30 Cal.2d 463, 468 [183 P.2d 10].)

 Section 21455 in nowise excepts existing actions. Defendant attempts to make a distinction between a law merely extending the term of a statute of limitation and one providing for the event (or time) at which the statute of

limitation commences to run, and claims that in the latter situation a new right is created, and being a new right, it cannot in the absence of express statement in the law operate retroactively. ■ However, section 21455 does not create a new right (assuming that it does more than declare existing law). It is definitely a statute of limitation. As to causes of action accruing prior to its enactment, it affects only those not already barred, and it does so by extending the time in which suit must be brought. No new duties, obligations or liabilities are created. It affects only plaintiff's remedy on an existing cause of action, by extending the time within which it might pursue that remedy.

2. *Due Process. Defendant not a Party in the Industrial Accident Commission Proceeding.*

The program set up by the Government Code pertinent here is for plaintiff board to bring a proceeding before the Industrial Accident Commission against the state employee (Patrolman Hanson here) wherein the issues of the industrial nature of the injury and the extent of the disability are conclusively determined. Subsequently plaintiff determines the amount of money to be paid the employee by a statutory formula. (Gov. Code, § 21292.) As defendant points out, no provision is made for a third party (here defendant) who negligently causes the injuries which require the employee's retirement, to be a party to that proceeding. ■ Defendant contends that the statutes creating a cause of action against him, having as their measure of damages the retirement benefits granted to Hanson in the Industrial Accident Commission proceeding without any opportunity being given defendant to contest the amount of Hanson's disability or the reasonableness of the payments, and without any provision being made by which defendant may have it determined that the disability has ended, amounts to a taking of defendant's property without due process of law.

The statutes creating a cause of action against defendant follow the Labor Code provisions which create a cause of action in favor of the employer or insurer against a third party tortfeasor whose conduct requires the employer to pay workmen's compensation benefits to the injured employee. There, as well as here, the third party is in no way privy to the proceeding by which the employer becomes obligated to pay compensation benefits. ■ It is well settled that the creation of such cause of action in favor of the employer

against the third person is not unconstitutional. (See *State Comp. Ins. Fund.* v. *Dalton.* (1936) 13 Cal.App.2d 284, 288 [56 P.2d 962].)

■ Defendant's liability is not determined in the Industrial Accident Commission proceeding. It is determined in this action. If the trial court had found that Hanson's injuries were not caused by defendant's negligence plaintiff could not have prevailed. The amount of liability of the retirement system to Hanson is determined by the commission. Section 3854, Labor Code, made applicable by section 21453, Government Code, provides, in effect, that the amount of liability sustained by the retirement system can be received in evidence and is considered as proximately resulting from the injury sustained by Hanson. That this is the measure of damages in an action of this kind is shown by the analogous situation in *City of Sacramento* v. *Central Cal. Traction Co.* (1926) 78 Cal.App. 215, 218-219 [248 P. 307], dealing with an action by the employer, City of Sacramento, against the defendant third party tortfeasor, for the amount expended by the city in medical, surgical and hospital treatment and compensation paid its employees injured through the defendant's negligence. The court said: "The jury determined from the evidence that appellant [the third party tortfeasor] was liable and the amount of liability was merely a matter of computation based upon the provisions of the Workmen's Compensation Act and flowed naturally from the fact of liability. If as a matter of law, the respondent [city] paid or had become obligated to pay such compensation, the damages sustained by the respondent were necessarily the amounts so paid or incurred by the terms of the act. (Citing *Moreno* v. *Los Angeles Transfer Co.*, 44 Cal.App. 551 [186 P. 800].) . . . The law has imposed an obligation upon an employer to pay compensation to its injured employees and has given it a right of subrogation as against a tort-feasor who had negligently injured the employee to the extent of the compensation so paid by the employer."

The Supreme Court (p. 222) in denying a hearing, stated: "Such denial, however, should not be taken as an approval of what is said in the opinion indicating that the measure of damages in such cases is the amount fixed by the Workmen's Compensation Act for injuries to be paid by the employer to the employee or his dependents. (See *Western States etc. Co.* v. *Bayside Lbr. Co.*, 182 Cal. 140 [187 P. 735].)" The Supreme Court's statement withholding approval of the lan-

guage in *Sacramento* as to the measure of damages must be considered in connection with the fact that in *Sacramento* the employer had paid the injured employees amounts in excess of the compensation fixed by the Workmen's Compensation Act. Thus, the Supreme Court said, in effect, that it withheld approval of the opinion of the District Court of Appeal apparently *limiting* the employer's recovery to the amount fixed by the Workmen's Compensation Act, the Supreme Court thereby intimating that the compensation amount so fixed would be a minimum limit, not a maximum one. This interpretation of the Supreme Court's language is more understandable when we consider *Western States etc. Co.* v. *Bayside Lbr. Co.* (1920) 182 Cal. 140 [187 P. 735], to which the court referred. That was an action brought by the employer of a deceased employee against a negligent third party causing his death. The employer, claiming to be subrogated to the rights of the widow and children of the deceased under the then Workmen's Compensation Law, brought an action against the third party for "the full amount of damages suffered by the family. . . ." (P. 148.) The court held that the plaintiff employer would be required to pay to the family the difference, if any, between the recovery from the third party tortfeasor and the amount paid by the employer to the family. It was because the action was brought to recover for the family over and above what was due the employer that the court there said: "There is nothing in the point that the measure of damages is that fixed in the Workmen's Compensation Act for compensation for injuries to be paid by the employer to the dependents of the employee." (P. 148.)

*Sacramento, supra* (78 Cal.App. 215), held, in effect, that under the Workmen's Compensation Act, where liability for injury to an employee by a third party tortfeasor is determined (and in the case at bench it was determined by the trial court) the measure of damages for that injury is subject to legislative control and that the amount of damages may be determined in some proceeding other than that which determines the liability of the third party. It should be pointed out that in that case there was no hearing or industrial accident proceeding to determine the amount of damages, as there was here in the Industrial Accident Commission proceeding. There, the City of Sacramento, without a hearing, determined the cost of the medical, surgical and hospital treatment for the injured employees, their average weekly earnings and the period of time over which such injury and incapacity

for duty would extend. From these amounts the court computed the amount that would have been awarded the injured employees under the Workmen's Compensation Act and instructed the jury that, if it found that defendant was liable for the employees' injuries, the plaintiff was entitled to recover the computed amounts. As the court there held this method of determining the measure of damages in an action against the third party tortfeasor to be valid under the Workmen's Compensation Act (the method was also held constitutional in *State Comp. Ins. Fund* v. *Dalton, supra,* 13 Cal.App.2d 284, 288), and as sections 21452 and 21453 provide for the application of all the pertinent Workmen's Compensation Act provisions to actions brought under the retirement act, there can be no question but that such provisions of the retirement act are also valid and constitutional.

The Labor Code subrogation provisions, adopted by reference in the retirement law, providing that the amount fixed by the Industrial Accident Commission as compensation for the employee may be recovered from a third party tortfeasor, have been in effect for over 40 years and their constitutionality has never been denied. There is no reason to hold that in applying the same measure of damages under the retirement law as under the labor law, the court is taking defendant's property without due process.[1]

3. *Equal Protection.*

Defendant contends that the Government Code pro-

---

[1]Section 21451, Government Code, is more favorable towards the third party tortfeasor than is section 3854, Labor Code. Under section 21451 the system can recover from the third party only the "amount which is the actuarial equivalent of the benefits which are provided by contributions of the State or contracting agency and for which this system is liable because of such injury . . ." whereas under section 3854, Labor Code, the employer may recover from the third party "any amount which the employer *has paid* or become obligated to pay . . . and such expenditures or liability shall be considered as proximately resulting from such injury . . . *in addition to any other items of damage proximately resulting therefrom.*" (Italics added.) As above shown, in *Sacramento* the employer was held to be entitled to recover from the third party, not only the compensation required to be paid by the employer but also that paid in excess of such requirement. In *City of Oakland* v. *Lyckberg* (1928) 95 Cal.App. 71 [272 P. 606], it was held that the city could recover from the third party tortfeasor the full amount of the salary of the injured police officer during disability, even though that amount was greater than the amount of compensation authorized by the Workmen's Compensation Act. Likewise in *Evans* v. *Los Angeles Ry. Corp.* (1932) 216 Cal. 495 [14 P.2d 752], it was held that a municipality could recover from the third party the full monthly salary paid an injured fireman during disability, even though no claim for compensation was made under the Workmen's Compensation Act and the payment was larger than the compensation provided by the act.

gram violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and article IV, section 25, of the California Constitution. This contention is based upon the fact that the program subjects to liability "only those who are sufficiently unfortunate to have their particular accident with a public employee who is on duty" and is thereby differentiated from the situation where the accident is caused to an employee of a private corporation such as the Standard Oil or the telephone company, which corporations have a retirement system. This contention is answered in effect in the recent case of *Bilyeu* v. *State Employees' Retirement System* (1962) 58 Cal.2d 618 [24 Cal. Rptr. 562, 375 P.2d 442]. There Bilyeu, a State Highway Patrolman, was injured in line of duty. He applied for and was granted a disability retirement and received certain sums from the retirement system. Bilyeu filed an action against the third party tortfeasor who caused the accident in which Bilyeu was injured. The board of administration of the retirement system filed a notice of lien in the action. After judgment was obtained against the third party the court allowed the board's lien against the judgment only for the amount which the system had already paid Bilyeu. Bilyeu appealed from this allowance and the board appealed from the court's failure to allow it the actuarial equivalent of the benefits Bilyeu would receive from the system. The court held that the system was entitled to this equivalent rather than only the amounts it had paid Bilyeu. Bilyeu contended that "the subrogation provisions deny him the equal protection of the laws and are otherwise unconstitutional. The claim of discrimination arises from the fact that the Legislature has not included all state employees, particularly legislators and judges, within a single act, but has provided for different and, plaintiff contends, more advantageous terms to such other employees." (P. 623.) The court said (p. 623): "There is no constitutional requirement of uniform treatment, but only that there be a reasonable basis for each classification. In *Sacramento Mun. Util. Dist.* v. *Pacific Gas & Elec. Co.*, 20 Cal.2d 684 [128 P.2d 529], we said at page 693: 'Wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond rational doubt erroneous. [Citations.]

A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it.' (See also *State of California* v. *Industrial Acc. Com.*, 48 Cal.2d 365, 371 [310 P.2d 7].)'' The court then pointed out the respects in which legislators and judges differ from state employees generally, and said (p. 623): ''In any event it cannot be said that the classifications established pursuant to article IV, section 22a of the Constitution are arbitrary and therefore unconstitutional. (See *Blumenthal* v. *Board of Medical Examiners*, 57 Cal.2d 228, 233 [18 Cal.Rptr. 501, 368 P.2d 101]; *City of Walnut Creek* v. *Silveira*, 47 Cal.2d 804, 811 [306 P.2d 453].)''

■ There is a legitimate difference between employees in private business and those in state employ which makes a separate classification of the latter reasonable. Private employment is purely contractual, and a corporation operating a retirement plan can make such conditions as may be agreed to by the employee. It could provide that the amount payable to the injured employee shall be reduced by the amount recovered by the employee from the third person or that the employee must bring an action against the third person as a condition to receiving benefits from the retirement plan. The state retirement system cannot do this. Its obligations are fixed by law and it must pay benefits whether or not the employee proceeds against the third party.

Private pension plans or insurers have no right against the third party where, through the action of that party, they are required to make payments to the members of the plan. In *Fifield Manor* v. *Finston* (1960) 54 Cal.2d 632, 639 [7 Cal. Rptr. 377, 354 P.2d 1073], the court said: ''Plaintiff has not cited to us any case in the California courts where a right of subrogation to a cause of action for tortious injury to the person has been recognized, *except in cases where such right of subrogation has been expressly granted by statute.* The Legislature where it has desired to give a right of subrogation in such cases, has done so in express language. . . .'' (Italics added.) The opinion then gives examples of such express language, among others, ''Government Code, section 21451, giving the State Retirement System a cause of action against a person causing a member's injury or death, to recover the actuarial equivalent of the benefits for which the system is liable . . .'' (P. 640.) ■ As pointed out in *Sacramento Mun. Util. Dist.* v. *Pacific Gas & Elec. Co.* (1942) 20 Cal.2d 684, 693 [128 P.2d 529] no constitutional principle is violated

"if the classification of persons or things affected by the legislation is not arbitrary and is based upon some difference in the classes having a substantial relation to the purpose for which the legislation was designed. . . . Wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond rational doubt erroneous.''

 The classification of state employees is based upon a difference from that of employees in private business and has a substantial relation to the purpose for which the legislation was designed, namely, to require reimbursement to the state by the person responsible for retirement benefits being paid by the state to an employee injured through the negligence of that person. Moreover, defendant is not in a position to urge that private insurers or private pension plans are discriminated against by the Government Code program, as he is in neither category. As said in *A. F. Estabrook Co.* v. *Industrial Acc. Com.* (1918) 177 Cal. 767, 769 [177 P. 48], "a contention that a statute denies equal rights and privileges by discriminating between persons and classes of persons 'may not be raised by one not belonging to the class alleged to be discriminated against.' ''

In *Bilyeu, supra,* 58 Cal.2d at page 624, it was further contended that the subrogation provisions of section 21451 "constitute an unlawful assignment of a personal cause of action arising from a tortious injury." The court held: "[T]here is no constitutional prohibition which would prevent the Legislature from . . . authorizing the instant assignment to a public agency." (P. 624.)

4. *The Releases.*

 Prior to obtaining any retirement benefits from plaintiff, Hanson and the State Fund released defendant from all claims either of them had. Plaintiff obviously neither knew of nor consented to such releases. Defendant contends that because of such releases, there were no rights to which plaintiff could succeed by subrogation. The subrogation provisions of the State Employees' Retirement Law adopt by reference the subrogation provisions of the Workmen's Compensation Act. (See *Bilyeu, supra,* 58 Cal.2d 618.) This includes section 3859, Labor Code. Section 3859, Labor Code,

as it read in 1956, provided: "No release or settlement of any claim under this chapter is valid without the written consent of the employer and employee." Here the consent of the employer, the State of California, was not obtained. Hence the releases could not affect the employer's right to subrogation under the statutory scheme. This type of subrogation, therefore, is distinguishable from those mentioned in *Anheuser-Busch, Inc.* v. *Starley* (1946) 28 Cal.2d 347 [170 P.2d 448, 116 A.L.R. 198], *Bernhard* v. *Delluaitante* (1935) 5 Cal.App.2d 585 [43 P.2d 338], and *Kidd* v. *Hillman* (1936) 14 Cal.App.2d 507 [58 P.2d 662], cited by defendant for the proposition that a release signed by the injured person terminated any subrogation rights of the insurer. The subrogation right given by section 21451 is a right that cannot be denied by a release by the employee or by the State Fund.

While a release by the State Fund would be effective as to any liability under the Workmen's Compensation Act, it is not effective under the retirement statutes. Public officers and bodies have only the authority given them by law and no power is given the State Fund either under the Workmen's Compensation Act or under the retirement statutes to execute a general release on behalf of the system. "One who deals with a public officer stands charged presumptively with a full knowledge of that officer's powers and is bound at his peril to ascertain the extent of his power to bind the government of which he is an officer, and any act of an officer to be valid must find express authority in the law or be necessarily incidental to a power expressly granted." (*Bear River etc. Corp.* v. *County of Placer* (1953) 118 Cal.App.2d 684, 690 [258 P.2d 543].)

Defendant contends that "plaintiff . . . had the right and opportunity to set off against the retirement benefits receivable by Hanson, those sums of money paid to Hanson by the defendant." Apparently what defendant means is that as defendant had paid Hanson and the State Compensation Insurance Fund $5,000, plaintiff board could offset that amount as to any sums which would become due Hanson from the board by reason of his retirement. Assuming that the board had such right of setoff, the board nevertheless had the right to proceed directly against defendant under the retirement statutes. It was not compelled to set off. Moreover, the State Compensation Insurance Fund, as compensation insurer of the Highway Patrol, would be entitled to recover the one year's full salary paid to Hanson in lieu of workmen's com-

pensation, pursuant to Labor Code section 4800, and in addition any other benefit paid Hanson under the other provisions of the Workmen's Compensation Act. The lien of the workmen's compensation insurer is prior to that of the retirement system. (Gov. Code, § 21454.) Thus, there would be but a small amount to set off. If the board were compelled to set off, its rights would be defeated wherever the settlement made with the tortfeasor was an improvident one. Actually, the system could not have set off its claim against Hanson.

As said in *Bilyeu, supra*, 58 Cal.2d at page 627, "[I]t is expressly provided in section 21451 of the Government Code that the retirement system is to recover 'an amount which is the actuarial equivalent of the benefits' for which the system becomes liable," and "the Legislature intended that the lien of the retirement system extend to the full amount of the judgment not otherwise allocated to proper and stated purposes." *Bilyeu* states further (p. 624) that the Legislature has given the state retirement fund a right of subrogation and has done so in express language.

The judgment is affirmed.

Sullivan, J., and Molinari, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 12, 1963.