[Civ. No. 32935.   Second Dist., Div. Five.   Sept. 16, 1969.]

CHRISTOPHER SMITH, a Minor, etc., et al., Plaintiffs and
Respondents, v. COUNTY OF LOS ANGELES et al.,
Defendants and Respondents.

CITY OF LOS ANGELES, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and
Respondents.

(Consolidated Appeals.)

Roger Arnebergh, City Attorney, Bourke Jones, John A. Daly and George J. Franscell, Assistant City Attorneys, Arthur Y. Honda and Felix E. Smith, Deputy City Attorneys, for Plaintiff and Appellant.

No appearance for Plaintiffs and Respondents.

Belcher, Henzie & Biegenzahn, Leo J. Biegenzahn and Robert D. Walker for Defendants and Respondents.

STEPHENS, Acting P. J.—This action arose out of an automobile accident which occurred on March 2, 1966. On that date John Charles Smith was on duty as a Los Angeles City police officer. While Officer Smith was operating a city vehicle at the Marengo on-ramp to the westbound San Bernardino freeway, a Los Angeles County-owned vehicle driven in the course of employment by Fire Department Captain Aaron F. McCrary collided with the city vehicle. Officer Smith lost his life in the collision.

An action for wrongful death (No. 886728) against the County of Los Angeles and Aaron F. McCrary was commenced by the heirs of Officer Smith. These heirs consisted of his surviving spouse and his four children. An action for wrongful death (No. 889555) was also commenced by the City of Los Angeles against the same defendants in the earlier numbered action. For convenience, the plaintiffs in action No. 886728 will hereinafter be termed "the Smith Heirs," and the plaintiff in action No. 889555 will be termed "the City." The prime defendant in each of these actions, Los Angeles County, will hereinafter be termed "the County," and the term "employee" hereinafter will include the employee's successors, wherever applicable.

After the two actions were at issue, they were consolidated by court order for the purpose of determining liability, leaving consolidation for the purpose of damage adjudication open to the discretion of the trial judge. At time of trial, the motion by the County to consolidate the cases for all purposes was argued and granted. During the trial, the City established damages of $26,160.23, consisting of payments of death benefits and burial allowances in the sum of $21,100, the amount of pension benefits actually paid to the Smith heirs, and other damage. In addition to the above amount of damages, the City sought to introduce evidence of the present value of all future or contingent pension payments to the Smith heirs which might thereafter be incurred.[1] After an objection to such evidence was sustained, the City made an offer of proof to the effect that a specified sum would be the actuarial amount which the City was obligated to pay by virtue of the future pension payments required of it, and that this sum was recoverable as damages. The jury returned two verdicts: one in favor of the Smith heirs for $400,000, and one in favor of the City for $26,160.23. Immediately following the

---

[1] It is conceded that the City had a pension system for its employees and was obligated to pay the Smith heirs thereunder.

return of the verdicts and their having been ordered filed, the clerk's minutes disclose: "In chambers, the Court orders the verdict in case #886728 . . . reduced to $373,839.77." The "Judgment on Verdict in Open Court" recites the two judgments, plus respective costs, in accordance with the court's "in-chambers" reduction. The City appealed. Subsequently, upon payment of the specified judgments to each of the respective plaintiffs, satisfaction of judgment as to each was filed.[2]

In its reply brief filed herein, the County succinctly states the basic issue presented to us: "The sole issue raised on this appeal is the validity of appellant's [the City's] claim that the Labor Code authorizes it to recover not only all amounts paid or incurred by date of judgment, but also the present value of all future or contingent payments which may thereafter be incurred."

By virtue of section 183 of its charter (Stats. 1947, pp. 3679-3687), the City was obligated to pay future pension benefits to the Smith heirs. That section, insofar as applicable here, provides: "Whenever any member of the Fire or Police Department shall die as a result of any injury received during the performance of his duty, . . . then an annual pension shall be paid in equal monthly installments to his widow, or child or children, . . . in an amount equal to one-half (½) of the average monthly rate of salary assigned to the ranks or positions held by such member during the three years immediately preceding the time of his death . . . Said pension shall be paid to the widow during her lifetime or until she remarries, and thereafter a pension shall be paid in equal monthly installments, in an amount equal to one-half of the average monthly rate of salary assigned to the ranks or positions held by such member during the three years immediately preceding the time of his death . . . to the legally appointed guardian of the child or children of such deceased member until such child or children shall have attained the age of eighteen years, . . . Provided, however, that during the lifetime of such widow or until she shall remarry, an additional amount shall be paid to such widow for each child during the lifetime

---

[2]Any contention that the satisfactions of judgments entered in this case rendered the appeal moot is without merit. (*Stein v. Simpson*, 37 Cal.2d 79 [230 P.2d 816].) The court had the power to reduce the Smith heirs' recovery if it believed it to be too high. This was not the reason for the reduction ordered. Though the reduction was improper because of the erroneous reason therefor, the Smith heirs have waived any objections thereto.

of such child, or until such child shall have married or reached the age of eighteen years, as follows: . . . for three or more children, fifty percent (50%) of such pension . . ."

It is obvious that the obligation to pay said pension, so far as it is not inconsistent with state law, is determined by the charter. The City was Officer Smith's employer. ▮ As was stated in *County of Los Angeles* v. *City of Los Angeles*, 219 Cal.App.2d 838 [33 Cal.Rptr. 503]: "The City of Los Angeles is governed by its own freeholders' charter adopted pursuant to the State Constitution (art. XI, § 8). As such it enjoys freedom from state legislative control with respect to its municipal affairs. When in conflict with general laws, and relating to municipal affairs, the provisions of its charter and ordinances adopted pursuant thereto must prevail. (*Cole* v. *City of Los Angeles*, 180 Cal. 617 [182 P. 436]; *Fletcher* v. *Porter*, 203 Cal.App.2d 313 [21 Cal.Rptr. 452].) It is only with respect to state affairs, as distinguished from municipal affairs, that the general laws of the state take precedence over local ordinances. (*Eastlick* v. *City of Los Angeles*, 29 Cal.2d 661 [177 P.2d 558, 170 A.L.R. 225]; *City of Pasadena* v. *Charleville*, 215 Cal. 384 [10 P.2d 745.)"[3] ▮ Where, however, there exists a conflict between the pension provisions of the City and the statewide system of workmen's compensation, the Labor Code prevails, for to that extent, the employee benefits are not *merely* of municipal concern. (*Healy* v. *Industrial Acc. Com.*, 41 Cal.2d 118, 122 [258 P.2d 1].)

A pension system established for municipal employees is a municipal affair, and within the chartered powers. The obligation imposed on the City to pay such pension amounts becomes effective upon the death of its employee. (*Tyra* v. *Board of Police etc. Comrs.*, 32 Cal.2d 666, 671 [197 P.2d 710].) ▮ The right to pension benefits following the death of the employee is a derivative right, an element of the deceased's compensation earned by the employee by his performance of his duties. (*Henry* v. *City of Los Angeles*, 201 Cal.App.2d 299, 313 [20 Cal.Rptr. 440].) To this broad statement must be added the limitation that such pension benefits are not "salary" in that ratio which the employee's contributions bear to the total of the pension payments (City plus employee contributions). (See *City of Los Angeles* v. *Industrial Acc. Com. (Fraide)*, 63 Cal.2d 242, 253 [46 Cal.Rptr. 97,

---

[3]See *Purdy & Fitzpatrick* v. *State of California*, 71 Cal.2d 566 [79 Cal.Rptr. 77, 456 P.2d 645], disapproving *City of Pasadena* v. *Charleville*, respecting restriction upon employment of aliens being solely a municipal affair.

404 P.2d 801]; *City of Los Angeles* v. *Industrial Acc. Com.* (*Morse*) 63 Cal.2d 263, 264 [46 Cal.Rptr. 110, 404 P.2d 814].) It is the excess of such death and dependency payments over and above those required by the Workmen's Compensation Act which constitutes "salary" payable to the dependents and heirs.

Since provisions of the Workmen's Compensation Act as set forth in the Labor Code (§ 3201 et seq.) have a bearing upon the contentions of the parties, it is necessary, at the outset, to note that the concepts of pension benefits and workmen's compensation benefits differ.[4] *Larson* v. *Board of Police etc. Comrs.*, 71 Cal.App.2d 60, 63-64 [162 P.2d 33] states: "The payment of workmen's compensation and the allowance of pension benefits are supported upon entirely different principles. The former is based upon section 21 of article XX of the State Constitution and the legislation pursuant thereto, which expresses the social public policy of the state to the effect that the unfortunate economic results caused by the injury or death of an employee shall, in a measure, be borne by society. A pension, however, generally represents 'an integral portion of the contemplated compensation' for the services rendered by the employee. (*Dryden* v. *Board of Pension Commrs.* (1936) 6 Cal.2d 575 [59 P.2d 104]; *Snyder* v. *City of Alameda* (1943) 58 Cal.App.2d 517 [136 P.2d 857].) 'A provision for a pension to his widow obviously benefits the member's economic status in a way similar to an increase of his wages. . . .' (*Sweesy* v. *Los Angeles etc. Retirement Board* (1941) 17 Cal.2d 356, 361 [110 P.2d 37].) Where, as here, the employee has made contributions over a period of years so that either he or designated dependents of his upon his death might have a pension, the right thereto should not be denied unless such an intention is clearly and unmistakably expressed." ▇ The employee, or his heirs, or the employer, have the right to file an action against a third party tortfeasor. The cause of action by the employee is for damages or wrongful death; the employer's action is to recover or be reimbursed for compensation or other payments made by him or which he is obligated to make. (*Ferrario* v. *Conyes*, 19 Cal.App.2d 58 [64 P.2d 975].) In a case such as that now before us, which does not involve the question of concurring negligence of the employer, the scheme of the legislation in the provisions of section 3852 authorizing

---

[4]All references to code sections are to the Labor Code unless otherwise stated.

the causes of action by an employee and/or employer against a third party tortfeasor seems clear.[5] In substance, the third party is liable for all the wrong his tortfeasance brought about; this includes both the damage to the employee and payments made or required to be made by the employer.

It has been held that the applicable provisions of the Workmen's Compensation Act are "merely a legislative recognition of the equitable doctrine of subrogation." (*Western States etc. Co.* v. *Bayside Lbr. Co.*, 182 Cal. 140, 148 [187 P. 735].) When either party (employee or employer) brings the action without the other, he is required to notify the other of his action (§ 3853), and this gives the other the right to join in that action if he so desires. If he chooses not to join, then recovery by the plaintiff includes the totality of the employee's and employer's damages and losses. Where the employee alone sues, his recovery may be subject to a first lien subrogation right in the employer (on application before satisfaction of judgment) for that amount which the employer has been and will be required to pay out. (§ 3856, subd. (b).)[6] In such instance, section 3855 provides: "If the employee joins in or prosecutes such action, either the evidence of the amount of disability indemnity or death benefit paid *or to be paid* by the employer or the evidence of loss of earning capacity by the employee *shall be admissible,* but not both. Proof of all other items of damage to either the employer or employee proximately resulting from such injury or death is admissible and is part of the damages." (Italics added.) Where the employer sues alone, he holds in trust for the employee all that recovered in excess of that which he has paid and is obligated to pay. (§ 3856, subd. (a);[7] *Sanstad* v. *Industrial*

[5]By this statement, we do not mean that there was not an issue of concurring negligence at the trial level. We mean that the determination by the jury that there was no concurring negligence establishes that as a fact, both at the trial level and at the appellate level.

[6]Labor Code, section 3856, subdivision (b): "If the action is prosecuted by the employee alone, the court shall first order paid from any judgment for damages recovered the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney's fee which shall be based solely upon the services rendered by the employee's attorney in effecting recovery both for the benefit of the employee and the employer. After the payment of such expenses and attorney's fee the court shall, on application of the employer, allow as a first lien against the amount of such judgment for damages, the amount of the employer's expenditure for compensation together with any amounts to which he may be entitled as special damages under Section 3852."

[7]Labor Code, section 3856, subdivision (a): "If the action is prosecuted by the employer alone, the court shall first order paid from any judgment for damages recovered the reasonable litigation expenses in-

*Acc. Com.*, 171 Cal.App.2d 32 [339 P.2d 943].) The recovery in such case is for the full amount of damages which the employee has suffered as well as the damages to the employer. (*State Comp. Ins. Fund* v. *Matulich*, 55 Cal.App.2d 528, 531 [131 P.2d 21].) Section 3854 provides: "If the action is prosecuted by the employer alone, evidence of any amount which the employer has paid or become obligated to pay by reason of the injury or death of the employee is admissible, and such expenditures or liability shall be considered as proximately resulting from such injury or death in addition to any other items of damage proximately resulting therefrom."

Where both employee and employer join in the action, or where separate actions by each have been consolidated, each recovers for that damage or loss peculiar to him. (*LaBorde* v. *McKesson & Robbins, Inc.*, 264 Cal.App.2d 363, 371 [70 Cal. Rptr. 726].) Section 3856 provides: "If the action is prosecuted both by the employee and the employer, in a single action or in consolidated actions, . . . [a]fter the payment of such expenses and attorneys' fees the court shall apply out of the amount of such judgment for damages an amount sufficient to reimburse the employer for the amount of his expenditures for compensation together with any other amounts to which he may be entitled as special damages under Section 3852."

As is apparent, each party plaintiff has a separate right of action, but the Legislature has provided that the defendant may be involved in but one trial.

Where either party has sued alone, the right of subrogation or trust imposition becomes applicable, for the one plaintiff may press the *total action* (for the right of both parties to judgment). Likewise, where both parties, in effect, act independently of the other, though their causes of action are consolidated, the *total action* is involved.

Here, there is no applicability for the rule of subrogation or imposition of trust except as those rules may be made applicable to the *totality* of a judgment rendered, though the recov-

---

curred in preparation and prosecution of such action, together with a reasonable attorney's fee which shall be based solely upon the services rendered by the employer's attorney in effecting recovery both for the benefit of the employer and the employee. After the payment of such expenses and attorney's fees, the court shall apply out of the amount of such judgment an amount sufficient to reimburse the employer for the amount of his expenditure for compensation together with any amounts to which he may be entitled as special damages under Section 3852 and shall order any excess paid to the injured employee or other person entitled thereto."

ery as to each party may be set forth separately therein.[8] In either case, single or joint plaintiffs, there results but the one *total action,* and the defendant is put to his defense but once with the *totality* of recovery for his tortfeasance at issue.

In a case somewhat similar in judgment form to the one before us, it was said: ''Because the two actions were consolidated and the plaintiffs in both actions were successful it does not follow that the judgment, as in this case, should not state separately the amount due each plaintiff or set of plaintiffs.'' (*Fitzgerald* v. *Quinn,* 131 Cal.App. 457, 461 [21 P.2d 656].) Since there are here two consolidated actions and two verdicts rendered, it was the total of these verdicts which would constitute the totality of the judgment if but one judgment were to be entered. Had the court sought a single verdict as well as a single judgment, a special finding by the jury as to the damages suffered by each plaintiff appears necessary.

With these principles before us, we are confronted with the fact that the Smith heirs may recover by judgment, generally speaking, only ''the aggregate of all pecuniary loss suffered by the heirs. The extent of a pecuniary loss is gauged upon dependency.'' (*LaBorde* v. *McKesson & Robbins, Inc., supra,* at p. 371.)

So far as that portion of the *total right of recovery* against the tortfeasor which is available to the employer is concerned, being a right of action separate and apart from the heirs' common law action for wrongful death (*City of Los Angeles* v. *Howard,* 80 Cal.App.2d 728 [182 P.2d 278]), it is governed by statute. Section 3852 provides: ''The claim of an employee for compensation does not affect his claim or right of action for all damages proximately resulting from such injury or death against any person other than the employer. Any employer who pays, or becomes obligated to pay compensation, or who pays, or becomes obligated to pay salary in lieu of compensation, may likewise make a claim or bring an action against such third person. In the latter event the employer may recover in the same suit, in addition to the total amount of compensation, damages for which he was liable including all salary, wage, pension, or other emolument paid to the employee or to his dependents.'' We must determine whether the City's obligation to pay future pension amounts comes

---

[8]We see no inconsistency between this conclusion and the quoted statement from *Western States etc. Co.* v. *Bayside Lbr. Co., supra,* which was restated with approval in *De Cruz* v. *Reid,* 69 Cal.2d 217, 222 [70 Cal. Rptr. 550, 444 P.2d 342].

within the employer's portion of the total recovery and should be separately designated in a judgment. The amounts of the charter obligation include as well as exceed the amounts payable under workmen's compensation.

From what we have heretofore said, it is helpful to view the instant action as if two separate actions with two separate injuries or losses had been evaluated and finalized in one judgment. It is the failure of the trial court to so visualize the consolidated actions before him and the failure of the County to so view its liabilities which bring the basic question before us. It is not contended that the City is not obligated to make future dependency payments to the Smith heirs, nor that this is not a detriment suffered because of the tortfeasance of the County. The County urges that "the Labor Code does not authorize recovery of present value of any potential future benefits." As we have indicated, we are unable to agree with this contention. ■ Each section in a system of laws must be harmonized so as to give meaning to the total purpose of the scheme. (*Bilyeu* v. *State Emp. Retirement System,* 58 Cal.2d 618, 627 [24 Cal.Rptr. 562, 375 P.2d 442].) ■ If there is to be complete recovery by the employer, we must give full meaning to the words "damages for which he was liable." This quoted portion of section 3852 has been held to mean "the damages for which the 'third person' [tortfeasor] . . . was liable and not the 'damages' for which the employer or insurance carrier was liable." (*State Comp. Ins. Fund* v. *Matulich, supra,* at p. 531.) The *Matulich* case involved a suit brought by the employer alone, and included in its action a claim for the personal injuries sustained by the employee. The construction of the code section language above quoted satisfied the needs of that case; however, that portion of its expression, "and not to the 'damages' for which the employer or insurance carrier was liable," must not be misunderstood. Such language is directed to that portion of the employer's action which was on behalf of the employee, and, of course, the employer would not have been liable for those damages. The *Matulich* court did not say that the employer could recover anything more (or less) in its own right than that for which *it* was obligated to pay to the employee. We apply that construction to the legislative directive, and find that an employer (not himself a concurring tortfeasor) may recover that which he "pays, or becomes obligated to pay. . . . or who pays, or becomes obligated to pay salary in lieu of compensation . . . may recover . . . in addi-

tion to the total amount of compensation, damages for which he was liable including all salary, wage, pension or other emolument paid to the employee or to his dependents." (§ 3852.) The fact that the employer's action has been consolidated with that of the employee or that of the employee's successors certainly cannot reduce his right of recovery for damages incurred, or limit the evidentiary proof of his damages.

In *Board of Administration* v. *Ames*, 215 Cal.App.2d 215 [29 Cal.Rptr. 917], the court recognized that where the law has imposed an obligation upon an employer to pay death benefits (see *Fifield Manor* v. *Finston*, 54 Cal.2d 632, 638-640 [7 Cal.Rptr. 377, 354 P.2d 1073]), it also has given it a right of subrogation as against a tortfeasor to the extent of the compensation paid, or which he has become obligated to pay. At page 224 of *Ames*, the court quoted from *City of Sacramento* v. *Central Cal. Traction Co.*, 78 Cal.App. 215, 218-219 [248 P. 307], as follows: " 'If as a matter of law, the respondent [city] paid or had become obligated to pay such compensation, the damages sustained by the respondent were necessarily the amounts so paid or incurred by the terms of the act. (Citing *Moreno* v. *Los Angeles Transfer Co.*, 44 Cal. App. 551 [186 P. 800].) . . . The law has imposed an obligation upon an employer to pay compensation to its injured employees and has given it a right of subrogation as against a tort-feasor who had negligently injured the employee to the extent of the compensation so paid by the employer.' " In *Ames*, the court construed *City of Sacramento, supra,* and considered the opinion rendered by the Supreme Court[9] in denying a hearing to be authority for the proposition that recovery of an employer against the tortfeasor includes, not only the amount of compensation required by the Workmen's Compensation Act, but all such excess payments as are required by operation of law. In the instant case, this would be the total benefits payable under the City's reitrement system.

Unless an actuarial equivalent of the present obligation to pay future pension benefits to the Smith heirs is permitted, there would seem to be no method by which there could be a recovery by the City, under the one-judgment principle, of "damages [in] an amount sufficient to reimburse the employer for the amount of his expenditures for compensation *together*

---

[9]This Supreme Court opinion is set forth on page 222 of *City of Sacramento, supra.*

*with any other amounts to which he may be entitled as special damages under Section 3852.''* (§ 3856, subd. (c).) (Italics added.) These ''special damages'' include such amounts as the employer has become obligated to pay, including ''all salary, wage, pension, or other emolument paid to the employee or to his dependents.'' The contention by the County that additional damages must be forthcoming from the damages assessed to the Smith heirs seems not only inconsistent with the overall legislative plan expressed in the Labor Code, but impossible of execution, as well. If it is the duty of the court, in compliance with section 3856, subdivision (c), to apply from the judgment the amount of damages sustained by the employer, how can this be done without permitting the establishment in evidence of the total damage suffered?

And section 3858 convinces us further that it is the total liability which must be fixed by the judgment against the tortfeasor. That section provides: ''After payment of litigation expenses and attorneys' fees fixed by the court pursuant to section 3856 and payment of the employer's lien, the employer shall be relieved from the obligation to pay further compensation to or on behalf of the employee under this division up to the entire amount of the balance of the judgment if satisfied, without any deduction.'' Since this section relieves the employer of the continuing duty to pay, it applies only to that portion of a recovery by the employee which is recovered by him on behalf of or in lieu of the employer, i.e., where the action is by the employee only, for then the recovery includes *and is subject to lien* in ''the amount of such judgment for damages under Section 3852.'' (§ 3856, subd. (b); see also *De Cruz* v. *Reid, supra,* 69 Cal.2d 217, 223; *Jacobsen* v. *Industrial Acc. Com.,* 212 Cal. 440, 449 [299 P. 66].) Certainly, if the Smith heirs by an action alone can recover a judgment ''subject to first lien . . . up to the entire amount of the balance of the judgment'' for the payments to be made by the City of ''all salary, wage, pension, or other emolument,'' then there *must* be a right of recovery by the City for damages actuarially computable for which it is obligated and for which it receives no lien. As stated in *Expanded Scope of Recovery in Industrial Third Party Litigation,* 41 State Bar Journal 383, 392: ''However, the writer can see no reason why the employer should have any lesser right to prove his damages when he is joined with the employee than he would have in suing alone''—nor, we add, than when the employee sues alone.

Again, how else could evidence be produced of "death benefit to be paid" except by actuarial evidence? We have, in our case, the Smith heirs prosecuting *their* action, as well as the employer prosecuting *its* action. If evidence of death benefits *to be paid* is admissible where the successors are plaintiffs (§ 3855), the recovery by them of such payments would necessarily be on behalf of the employer and subject to his lien. Where both parties, employee and employer, are plaintiffs, as here, the jury may properly award each a sum for damages which each has suffered, and no lien then is applicable.

It is suggested that any actuarial computation is based on a contingent obligation. Apparently this suggests that there is the contingency of remarriage of the surviving spouse which the actuarial equivalent of future payments would not take into consideration. Conceding that the County is liable only for such damages as it has occasioned the City, we see no reason why a judgment cannot be so drafted as to adequately protect the County in case of the happening of such a contingency. Lawyers and judges are ingenious in draftsmanship. Such a judgment to be paid from a trust fund providing for payments in the nature of an annuity, with the remainder over to the defendant in case of the happening of specified contingencies, is not difficult to conceive. Other or more effective judgment provisions may well occur to the parties and the court in this type of action.

We recognize that such a judgment is not the simplest to compose, but that does not mean that the difficulty is insurmountable.[10]

One further comment must be made relative to the "payments made or to be paid" by the employer for which by statute it is given the right of recovery against the defendant. We observe what appears to be a possible apportionment of loss by way of the analysis set forth in *City of Los Angeles* v. *Industrial Acc. Com.*, 63 Cal.2d 242, 253 [46 Cal.Rptr. 97, 404 P.2d 801],[11] where the court states: ". . . Although we

[10]By our statements on draftsmanship of a judgment, we do not say that such contingency may even be properly raised. This evidentiary question has not been presented on this appeal, and therefore, we do not determine it. It may well be that the theory of exclusion of such evidence in wrongful death cases is equally applicable to the type of action here involved. (See *Cherrigan* v. *City etc. of San Francisco*, 262 Cal.App.2d 643, 650-651 [69 Cal.Rptr. 42].)

[11]This case considered the problem of apportionment in its consideration of disability payment credits. We see no substantial difference between the necessity to consider apportionment in that case and the same need in the case of wrongful death dependency payments. In both situa-

then apparently face a dilemma, the difficulty dissolves upon the realization that *to the extent* that the employee receives workmen's compensation benefits which consist of employee deductions he does not obtain 'double recovery.' Viewed in this light the proper method becomes clear. We must regard each dollar which is paid out of the pension fund as consisting in part of tax monies and in part of employee contributions.

"The city, therefore, should receive a partial credit against workmen's compensation liability for the disability pension it pays each employee. The credit should bear the same ratio to workmen's compensation liability as the 'city's contributions' bears to the 'total contributions.' For example, if monthly workmen's compensation liability to an employee is $120 and the ratio of 'city's contributions' to 'total contributions' is 3 :4, then the city is entitled to a credit of $90.[12]

"We cannot determine from the record of the instant case the exact credit which should be allowed to the city. We therefore remand the case to the commission to determine the amount of such credit. The commission, on remand, should determine the 'employee contributions,' the 'city's contributions,' and the 'total contributions.' The 'total contributions' are the sum of the 'employee contributions' and the 'city's contributions.' The 'city's contributions' are the aggregate tax monies paid into the pension fund during the years Fraide was employed by the city as a policeman and paid into the fund. 'Employee contributions' are the aggregate deductions paid into the fund by all firemen and policemen during those years. [Footnote omitted.] The commission must look to the total deductions from all firemen and policemen because to fail to do so would be to disregard the basic nature of the disability pension system which must be to provide a system

tions, the employer may not receive credit for paying out that which was contributed by the employee. As we view the obligation to make such payments, and their being made, the City has been damaged only to the extent to, and should receive reimbursement only for, that which it has been required to pay. That proportion of each payment which, by a ratio of contribution, is found to have been contributed to the pension fund from the salary of the employee, is not damage sustained by the City. Since the law provides that the employer shall recover such payments in its action, it holds the *excess* of its actual loss in trust for the employee's successors.

"[12]The method of proportionate allocation of commingled properties is not unknown to the courts of this state. See, e.g., *Title Ins. & Trust Co.* v. *Ingersoll* (1910) 158 Cal. 474, 490 [111 P. 360]; *Horr* v. *Barker* (1858) 11 Cal. 393, 403-404 [70 Am.Dec. 791]; *Harris* v. *Hensley* (1927) 83 Cal.App. 283 [256 P. 832]."

of insurance. Many members pay into the fund and are never injured. The city may not use the particular deductions they contribute to the fund to pay workmen's compensation liability any more than it can use Fraide's. [Footnote omitted.]

"We believe that the situation compels the adjustment we have outlined. Here the city has chosen a questionable method of handling the employees' contributions. Here the city itself has commingled the employee contributions with tax monies in a fund from which disability pensions are paid. Surely the city cannot insist that the employees' contributions be ignored. Thus, we cannot allow the city a total credit against workmen's compensation pursuant to its charter. On the other hand, we cannot overlook the fact that the city's tax monies constitute an important source for the pension fund. To permit the city a partial credit against workmen's compensation is to dispose of the case upon the basis of the exact equities of the contending parties."

We recognize that the computation of the ratio of dependency pension attributable to the employee's contribution as compared to that provided by the City is not an easy one, but this is a problem of accounting only.

Since the law provides that the Smith heirs in this action recover that damage rendered to them, and the City recovers only its damage, it cannot reasonably be said that the judgment, separately stated by the jury verdicts, included any of the excluded future pension damages which the City has suffered. The City, then, has no lien right to the Smith heirs' recovery.

The County argues that any recovery over and above the $26,160.23 must come from the recovery of the Smith heirs. In support of this contention, the County quotes a jury instruction given by the court at its request, which was not objected to by the City:

"If you find that the City of Los Angeles was not negligent, or, if it was negligent, that its negligence did not concur with the negligence of any of the defendants as a proximate cause of John Smith's death, then you will find plaintiffs Smiths' damages in accordance with my instructions on the subject of damages and without regard to the amount of pension and compensation benefits paid to the plaintiffs, and you will not deduct from the damages so found by you the amount of such pension and compensation benefits paid to the plaintiffs Smith. The law provides a means by which the City will be reimbursed for the pension and compensation benefits paid

to or for the plaintiffs Smith." (Defendants' Special Jury Instruction No. F, modified 7-5-67.)

We see no necessity for the City to object to the instruction, and the County cannot object to its requested instruction even if it results in double recovery by the Smith heirs.[12] The City was erroneously prohibited from producing evidence of its total damage, and this reversal relates only to the amount of recovery to which the City is entitled from defendants.

The judgment as to Christopher Smith, Kimberly Smith, Matthew Smith, Jennifer Smith, and Carol Smith is affirmed. The judgment as to plaintiff City of Los Angeles is reversed as to damages only.

Aiso, J., and Reppy, J., concurred.

A petition for a rehearing was denied October 10, 1969, and the opinion was modified to read as printed above. The petition of the defendants and respondents for a hearing by the Supreme Court was denied November 26, 1969. Mosk, J., was of the opinion that the petition should be granted.

---

[12]The County cannot now claim error in the court's having given the instruction, even though it was prepared by the County at the court's direction. If the County desired protection from the result it is now complaining about, it was incumbent upon it to claim error and to file its counterappeal. This it failed to do.