[Civ. No. 8049. Second Appellate District, Division Two.—November 17, 1933.]

ANN CHRISTY, Respondent, v. HERBERT M. BARUCH CORPORATION et al., Appellants.

Kidd, Schell & Delamer for Appellants.

Dan C. A. Smith and George B. Webster for Respondent.

ARCHBALD, J., *pro tem.*—From an order granting plaintiff's motion for a new trial after verdict of the jury and judgment in favor of defendants, the latter have appealed.

Plaintiff, driving a Ford coupe, was returning home from her work at the studios shortly after 11 o'clock in the evening of August 12, 1930. Going west on Santa Monica Boulevard on the north roadway thereof, she came to its intersection with Doheny Drive. There is such an intricate combination of intersections of streets near this point that the situation can only be adequately portrayed

by a drawing introduced as an exhibit by plaintiff, a copy of which we here show:

Plaintiff drove slowly into the intersection of such north roadway with Doheny Drive, passed the traffic button and turned left on Doheny. Before crossing the street railway tracks she came to a full stop, then started forward in

second gear and proceeded to cross the tracks. It is to be observed that after she crossed the tracks on Doheny Drive she faced the intersection made by the south roadway of Santa Monica Boulevard, Doheny Drive and the converging of Melrose Avenue from the east with Doheny, and was faced with possible cross-traffic on both such streets. Plaintiff testified that as she came "down across the tracks" she "watched the traffic in Melrose and on this side of Santa Monica, and I was watching the traffic until I got well past the center of the street and started up and was ready to go into third, and my lights were on this ditch-digging machine and I was right on top of it, and I put my brakes on as fast as I could and tried to turn off of this machine, but I didn't have time enough, didn't have room enough, and I crashed into it"; that she "couldn't have been going more than about twenty or twenty-five at the most" (apparently at the time she saw the danger), and that as a result of the collision she received certain injuries. The evidence shows that there was a filling station on the triangle where Melrose Avenue and the south roadway of Santa Monica Boulevard intersect, and the map shows a brick building at the northeast corner of Doheny Drive and the north roadway of Santa Monica Boulevard. Plaintiff passed over this same route in the morning going to work. At that time the ditch digger was not there, but on the east side of Doheny Drive, in the block in which the accident happened, large concrete sewer-pipes sixty inches in diameter were placed end to end, obstructing the east side of the drive to such an extent, as one witness expressed it, that after the ditch digger was placed there but about twenty feet of the street was open for travel.

■ The court instructed the jury by reading section 113a and subdivision (b) 2 of the California Vehicle Act (Stats. 1927, chap. 752, p. 1436), relative to the rate of speed being fifteen miles per hour at intersections where the driver's view is obstructed and advising the jurors that if they found that plaintiff violated such provisions she would be guilty of negligence, and that if they further found that such negligence contributed to the happening of the accident to any extent whatever plaintiff could not recover. In granting the motion for a new trial the court stated that such action was taken by reason of prejudicial

error in the giving of "an instruction complained of by the plaintiff on her motion for a new trial", which there was no evidence to support.

Appellants urge that the map showing the brick building mentioned, as well as the testimony of plaintiff as to the filling station, supports the giving of such instruction, and that if plaintiff had been going at the lawful rate of speed prescribed she would have been able to stop her car after seeing the ditch-digging machine, and in consequence her negligence was the proximate cause of the accident. So far as the brick building is concerned, it obstructs the view of the intersection of said north roadway with Doheny Drive only.

The evidence shows that the filling station referred to was "a partial frame and partial glass" structure, "with a roof on it" and "pumps out in front with a canopy over it", and perhaps a battery shop, etc., immediately back of it. Plaintiff on cross-examination was asked: "So that this building here obstructed to some extent your view into Melrose, did it not?" Her answer was: "Yes, you have to watch there very carefully."

We must assume that plaintiff's view was partially obstructed by the filling station and that such intersection was one of obstructed vision within the meaning of said section. The question still remains as to whether or not, the collision having been with a stationary object from twenty to seventy-five feet south of the intersection, such section applies so as to make a *prima facie* case of negligence on plaintiff's part by reason of the fact that she was admittedly exceeding the limit of fifteen miles per hour in crossing a part of such intersection, at least.

Negligence has been said by the Supreme Court, quoting from Cooley on Torts, to be "the failure to observe, for the protection of the interests of another person, that degree of care, precaution and vigilance which the circumstances justly demanded, whereby such other person suffers injury" (*Barrett* v. *Southern Pac. Co.,* 91 Cal. 296, 302 [27 Pac. 666, 667, 25 Am. St. Rep. 186]). There would seem to be no question but that section 113 of the California Vehicle Act, subdivision (b) 2, was enacted to protect the interests of those persons properly using so-called "blind" or "obstructed" intersections, by expressly making speed across

such a place in excess of the limits fixed *prima facie* evidence of a violation of section 113a, which denounces the driving of a vehicle on a public highway at a speed "greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway", or "at such a speed as to endanger the life, limb or property of any person" (subd. [c]). Certainly such a violation would only make a *prima facie* case of negligence in a civil action if that is the effect in a criminal action where the party is charged. That being the case, and the evidence showing in this proceeding that neither the defendants nor anyone else except plaintiff was using or attempting to use such intersection, there would seem to be no person's right or interest to be protected by said subdivision (b) 2. From this it would seem to follow that the question of plaintiff's violation of law should be determined by the prohibition of said section 113a, under the facts of the case. In our opinion when plaintiff approached such intersection, entered it and saw no one in or near it, as the evidence shows, there was no one whose "interest" or "rights" were under the protection of the subdivision mentioned, and so far as defendants are concerned the question of her negligence was one resting on the facts and was not to be imputed from a *prima facie* violation of law not intended for their protection.

In the case of *Wiley* v. *Cole*, 67 Cal. App. 762 [228 Pac. 550], a similar instruction, given at the request of defendant, was held to be prejudicially erroneous, not only because the intersection was not shown to be one of obstructed view, but because "of the fact that the accident unquestionably occurred at a point ouside the intersection". In that case the plaintiff was traveling in a northerly direction and the defendant in a southerly direction on the same street. Plaintiff crossed the intersection in question at the rate of 20 to 25 miles per hour and the collision occurred 15 feet north of the northerly line of the intersecting street.

Appellants urge that the case of *Botti* v. *Savill*, 97 Cal. App. 524 [275 Pac. 1029], is authority for their contention that the section is applicable, even though the accident did not occur in the intersection. We cannot so read it. In that case the appellant's decedent was struck 10 feet outside of an intersection not shown to be obstructed, and

there was "sufficient evidence for the jury to have found that defendant was free from fault and that the negligence of the deceased was the proximate cause of the accident". The appeal was from a judgment in favor of defendant. The court in that case apparently stresses the fact that inasmuch as "all the evidence in the case showed that the accident occurred north of the intersection", and there being no evidence that the view was obstructed, the submission of the question of the public or private character of the lane forming the intersection to the jury "was more favorable to appellants than prejudicial". An instruction similar to the one given here was offered by the appellant, but the jury found for defendant notwithstanding. Here, however, in our opinion, such an instruction, in view of plaintiff's testimony as to the rate of speed at which she traveled over a portion of the intersection, amounted almost to a charge to the jury to find for defendants; and in our opinion the trial court was correct in deciding that it should not have been given.

██ It is urged that even if it was error to have given the instruction above mentioned, nevertheless under section 4½ of article VI of the state Constitution the judgment should not have been set aside, as no miscarriage of justice is shown by the evidence to have resulted therefrom, in view of the fact that there is no evidence of the negligence of defendants proximately contributing to plaintiff's injury and that the accident was the result of plaintiff's own negligence. We are of the opinion that the evidence is sufficient to support the conclusion that defendants were responsible for the placing of the machine where it was, and that the trial court might well have concluded that placing it in such close proximity to such an intricate combination of street-car tracks and streets was in itself negligence, regardless of whether or not defendants were negligent in their maintenance of warning lights. The opposite conclusion, both as to that and as to the question of negligence in maintaining lights, might also be drawn. However, as has often been said, on a motion for new trial it is the exclusive province of the trial judge to choose between conflicting conclusions. This court cannot.

Plaintiff testified that she did not look to the front until after she passed the intersection of Melrose and the south

roadway of Santa Monica Boulevard, and indicated a point on the map marked ''ac2'' as the place where she ''looked straight forward''. By looking at the map it will be seen that the point marked is apparently where the south line of Melrose extended intersects the course plaintiff was traveling, and is about one-third of the distance across the south roadway of Santa Monica Boulevard, which is 37½ feet wide measured on a right angle, but considerably more—though how much we do not know—on the angle at which Doheny Drive crosses it. It will be seen then that plaintiff was at such point somewhat more than 25 feet—two-thirds of 37½—north of the south line of Santa Monica Boulevard. The ditch digger was from 20 to 75 feet south of such line. Plaintiff, then, at the time she apparently first looked down Doheny Drive, was from 45 to 95 feet away from the huge piece of machinery. Mr. Powers, who was following plaintiff on Santa Monica Boulevard, turned to the right on that thoroughfare and drove 50 or 60 feet further, when he heard the crash. On looking over he saw the ditch digger, even without assistance of the lights of his auto, and evidently from such point no red lights were visible. Mr. Miller and Mr. Kaden, both witnesses for plaintiff, who about an hour or so earlier came down Melrose and stopped at Doheny to make a right turn, saw the machine. It will be seen from the map that the place where they stopped before making the turn was at least as far from the ditch digger as was plaintiff when she stopped before crossing the street-car tracks on Doheny. The lights were then out on the east and north of the machine.

Mr. Wright, a witness for defendants, saw the machine from the same intersection. Another of defendants' witnesses, Mr. McDonald, drove into Doheny Drive at the intersection north of Carmelito Place, and about 400 feet from the ditch digger, between 9:30 and 10 o'clock P. M., saw the outlines of the machine as well as the red lights at that time, and could tell it was a ditch digger. Mr. Wallace, who set out the lights at about 6 P. M. that evening, went with his wife to a picture theater, about 200 feet west of Doheny on Melrose, at about 9:15 P. M., and as they had seen the picture then showing they walked about 100 feet west of the theater, and while conversing looked over toward the machine. Wallace testified that they could see

the machine "clearly", and that he even pointed out parts of it to his wife. The evidence also shows that the night was clear and that the electroliers at the corner of Melrose and Doheny Drive, each fitted with two 400 candle-power lamps, were lighted at the time of the accident. It would seem that there is no conflict in the evidence concerning the fact that the huge machine, 10 to 12 feet wide and about the same height, and 20 to 22 feet long, was plainly visible to plaintiff at all times while she was on Doheny Drive if she had but looked forward, and we are forced to the conclusion that even if the red lights above referred to had been burning she would not have seen them before she did actually see the machine, as she did not look. Nor could she assume that the roadway would be clear at night merely because it was clear in the morning when she came over it; and the presence of the cement pipes on the east side of the road and the fact that the pavement was broken up for a width of seven or eight feet was a warning of possible danger that should have made one exercising reasonable care take at least one look ahead in ample time to have stopped if the roadway was not in fact clear.

We are forced to the conclusion that, with the absence of conflict in the evidence on the question of visibility of the machine at the time in question, a jury could only conclude that plaintiff was negligent, and that no miscarriage of justice resulted in so instructing the jury.

Order reversed.

Stephens, P. J., and Craig, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 15, 1934.

Waste, C. J., and Curtis, J., dissented.