[Civ. No. 13964. Fourth Dist., Div. Two. July 7, 1975.]

BOARD OF ADMINISTRATION, PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Plaintiff and Appellant, v. LOENNY A. KUPPENS et al., Defendants and Respondents.

## COUNSEL

Evelle J. Younger, Attorney General, Willard A. Shank, Assistant Attorney General, Edward M. Belasco and Anne S. Pressman, Deputy Attorneys General, for Plaintiff and Appellant.

Roberts, Mead & Harrison, Roger W. Roberts, Ellis J. Horvitz and Arthur E. Schwimmer for Defendants and Respondents.

## OPINION

TAMURA, J.—The Board of Administration of the State Public Employees' Retirement System (System) brought this action against an alleged third party tortfeasor and others to recover the value of benefits payable to a member of 10 years as a result of personal injuries suffered by him in a highway accident. The trial judge granted defendants' motion for summary judgment and plaintiff appeals from the judgment of dismissal.

The basic allegations of the complaint may be summarized as follows: In April 1971, a police officer (employee), riding a motorcycle, was struck by an automobile negligently driven by defendant Agnes L. Kuppens, owned by defendant Genny A. Kuppens, and insured by defendant Automobile Club of Southern California. In February 1973, as a result of injuries sustained in this accident, the employee was granted disability retirement benefits payable by the System. By right of subrogation, the System seeks recovery of half of the actuarial equivalent of those benefits in the amount of $38,981.02.

The following undisputed facts form the basis of the summary judgment: During 1972 defendants entered into settlements with the employee, the City of Riverside (city) as his employer, and State Compensation Insurance Fund (State Fund) as his employer's compensation insurer. The total paid under the settlements was $34,088.83. Defendants obtained complete releases from each of the parties with whom they settled, covering losses from the accident "of whatever nature sustained or incurred . . . now or in the future . . . including losses, damages and obligations which are unknown and unanticipated." As these settlements were concluded long before the System's obligation became fixed, it took no part therein. The only issue on appeal is whether, as the trial judge ruled, these settlements and releases bar recovery by the System.

The applicable subrogation provisions of the State Employees' Retirement Law are found in Government Code sections 21450-21455. Section 21451 grants the System the right to recover from third parties a maximum of one-half of the actuarial equivalent of benefits which become payable due to the death or injury of a member proximately caused by an act of the third party. Section 21452 authorizes the System's board of administration to contract with the Attorney General or State Fund for recovery of subrogated claims. Section 21453, which is central to the issue before us, provides in pertinent part: "Under such contract, the [System] may, to recover such amounts . . . commence and prosecute actions, file liens, or intervene in court proceedings all in the same manner and to the same extent, provided in Chapter 5 (commencing with Section 3850), Part 1, Division 4 of the Labor Code, for the state fund or employer . . . . The state fund or the Attorney General, as the case may be, may compromise claims before or after commencement of suit or entry of judgment for such amount as may be approved by a person duly authorized by the board for such purpose. . . ."

The designated provisions of the Labor Code include section 3852, which gives the employer a separate cause of action against the third-party tortfeasor, and section 3859, which, as amended in 1971, provides: "(a) No release or settlement of any claim under this chapter as to either the employee or the employer is valid without the written consent of both. Proof of service filed with the court is sufficient in any action or proceeding where such approval is required by law. [¶] (b) Notwithstanding anything to the contrary contained in this chapter, an employee may settle and release any claim he may have against a third party without the consent of the employer. Such settlement or release shall be subject to the employer's right to proceed to recover compensation he has paid in accordance with Section 3852."

Defendants argue, in essence, that the System's rights are based solely upon subrogation to the rights of the employee, the city, or both; the System is bound by the general releases executed by both the city and the employee according to the well-established principle that the rights of the subrogee can be no greater than those of the subrogor; and if the Legislature did not intend such settlements to bind the System, it would have said so explicitly.

The System replies that it is subrogated to the rights of the employee in the same manner as the employer and, like the employer, its cause of action against defendants may not be foreclosed by a settlement to which it has not consented. This result, it contends, is clearly intended by Government Code section 21453 and Labor Code section 3859. We agree.

The need to protect the employer from collusive or ill-advised settlements between the employee and the third party has long been recognized. "The purpose of section 3859 . . . is of course to protect the rights and interests of employee and employer and to prevent or discourage either of them from obtaining a recovery from the third party at the expense or the disadvantage of the other." (*Brown* v. *Superior Court,* 3 Cal.3d 427, 431-432 [90 Cal.Rptr. 737, 476 P.2d 105]; see also *Smith* v. *Trapp,* 249 Cal.App.2d 929, 940 [58 Cal.Rptr. 229].) Prior to 1971, this was accomplished by barring either employer or employee from settling without the other's consent. By the 1971 amendment to section 3859 of the Labor Code, the Legislature determined that the same result could be reached by allowing each party to settle separately but without prejudice to the rights of the other. (See *Van Nuis* v. *Los Angeles Soap Co.,* 36 Cal.App.3d 222, 227-231 [111 Cal.Rptr. 398].)

The System stands in the same relation to the employer and the employee as each stands to the other, and needs the same protection against settlements made without its participation or consent. Neither the employer nor the employee can be depended upon to safeguard the System's interests, as is evidenced in the case at bench by their execution of the releases before the System's obligation to the employee had even been determined. The protection which the System needs is provided by Government Code section 21453, which incorporates by reference Labor Code section 3859. (*Board of Administration* v. *Ames,* 215 Cal.App.2d 215, 229 [29 Cal.Rptr. 917].) Where the latter reads "employer" the Legislature has commanded us to substitute "the System."

Defendants do not contend that a release executed by the employee alone would bind the System. That it cannot do so was decided in *Board of Administration* v. *Ames, supra,* 215 Cal.App.2d 215, 230. Defendants contend that the employer's release, or at least releases by both employer and employee, eliminate the System's right of subrogation. The relationship between the System and the employer must therefore be considered.

Evidence that the Legislature regards the System's interests as distinct from those of the employer is furnished by section 21454 of the Government Code, which provides: "Any amount recovered by way of subrogation by the employer, workmen's compensation insurer or this system shall be applied first to the amounts which the employer or its insurer has paid or become obligated to pay. The balance of the amount recovered as specified in Section 21451 shall be paid to, or retained by, this system." Since the employer will be paid first, it has no interest in seeing that a recovery from a third party is large enough to reimburse the System. Also significant is section 21453, previously quoted, which requires that the amount of settlements negotiated on behalf of the System be approved "by a person duly authorized by the board for such purpose." The clear implication of these provisions is that the employer and the System are separate claimants and each is to look out for its own interests.

*Board of Administration* v. *Ames, supra,* 215 Cal.App.2d 215, does not support defendants' position. The situation there was virtually identical to the case at bench except that the only release executed by the employer was limited to property damage. Rejecting a contention that a complete release by the employer's workmen's compensation carrier barred recovery by the System, the court said: "The subrogation provisions of the State Employees' Retirement Law adopt by reference

the subrogation provisions of the Workmen's Compensation Act. (See *Bilyeu, supra,* 58 Cal.2d 618 [24 Cal.Rptr. 562, 375 P.2d 442].) This includes section 3859, Labor Code. Section 3859, Labor Code, as it read in 1956, provided: 'No release or settlement of any claim under this chapter is valid without the written consent of the employer and employee.' Here the consent of the employer, the State of California, was not obtained. Hence the releases could not affect the employer's right to subrogation under the statutory scheme. This type of subrogation, therefore, is distinguishable from those mentioned in *Anheuser-Busch, Inc.* v. *Starley* (1946) 28 Cal.2d 347 [170 P.2d 448, 166 A.L.R. 198] [additional citations omitted] cited by defendant for the proposition that a release signed by the injured person terminated any subrogation rights of the insurer. The subrogation right given by section 21451 is a right that cannot be denied by a release by the employee or by the State Fund." (*Board of Administration* v. *Ames, supra,* at pp. 229-230.)

*Ames* does not say, nor do we read it as implying, that a release executed by the employer would be binding on the System. Rather, it says that the *type* of subrogation granted to the System is the very same type enjoyed by the employer. The common feature is that, unlike the right of subrogation at common law, these statutory rights of subrogation are not affected by releases to which the subrogee has not consented. The subrogation rights of the System being distinct from, but equal to, those of the employer and the indestructibility of the employer's rights being clearly provided by statute, the System is not bound by releases to which it has not consented.

The likely result of a ruling in favor of defendants would be that henceforth employers would endeavor to include in any release a clause reserving the rights of the System. While this would not serve any immediate interest of the employer, it would be a natural form of inter-governmental cooperation. The subrogation rights of the System would then depend on whether counsel for the employer were thorough and alert enough to include the clause. From the system's point of view, this factor would be quite fortuitous and does not accord with our understanding of the legislative scheme governing the System's subrogation rights.

Upholding the System's contention, on the other hand, does not create any new hardships for third party tortfeasors or their insurers. As stated above, a ruling in defendants' favor would insulate third parties from claims by the System only in the exceptional case where the employer

inadvertently executed an overbroad release. Although it may be troublesome for third parties to deal with so many claimants, this is unquestionably a state of affairs intended by the subrogation provisions of the Labor and Government Codes.

Judgment of dismissal is reversed.

Gardner, P. J., and Kerrigan, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 4, 1975.